UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:15-CR-30076-RAL |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENT |
| CHRISTOPHER DAVID EDENSO, SR., | |
| Defendant. | |

A five-week-old baby boy died under suspicious circumstances while in the care of his father, Christopher David Edenso, Sr. Following his arrest, Edenso was advised of his rights, requested a lawyer and then made statements, in response to questioning, which he now seeks to suppress. Because the statements were unlawfully obtained, but are admissible as impeachment evidence, the Court recommends that Edenso's suppression motion be granted in part and denied in part.

## BACKGROUND

Edenso is charged with second degree murder arising out of the death of his infant son, C.E., on June 15, 2015. He was interviewed the next day, while in custody, at the Rosebud Sioux Tribal Jail. FBI Special Agent Adam Rowland and Kory Provost, a special agent with the Tribe, conducted the interview and recorded it.

Edenso was Mirandized and his handcuffs removed. Once both these tasks had been completed, Agent Rowland gave Edenso this advisement: "[I]f you want to talk to us, um, without a lawyer present, um, sign down there. [I]f you don't, tell us you don't and that you want a lawyer present, and then we will go about our business."[1]

Edenso's response was, "I want a lawyer,"[2] to which Agent Rowland replied, "Ok."[3] The sound of writing and handcuffs then can be heard in the background.[4]

After a moment of silence[5], Agent Rowland reinitiated the conversation saying, "[L]et me tell you this before you go, um, if you want to talk to us before you have a lawyer present, it's better if you talk to us . . . ."[6]

At this point, Edenso interrupted Agent Rowland and asked if he could talk to the agents first.[7] The agent told Edenso he could if he wanted to, but he had to sign the advice of rights form beforehand.[8] Edenso expressed a willingness to sign the form

---

[1] Mot. Hrg. Ex. 1, 1:34-1:43 (Sept. 29, 2015).

[2] *Id.* at 1:43-1:44.

[3] *Id.* at 1:44.

[4] *See id.* at 1:48-1:57.

[5] *See id.* at 2:03-2:09.

[6] *Id.* at 2:09-2:17.

[7] *See id.* at 2:18-2:19.

[8] *See id.* at 2:20-2:24.

and did so, acknowledging that he would answer questions without a lawyer present.[9] For the next 23 minutes or so Edenso talked to Agents Rowland and Provost,[10] making incriminatory remarks, and ultimately admitting that he caused injuries to C.E. by shaking the baby upside down – while holding his legs – and slamming him on the bed to stop him from crying.[11]

Edenso moved to suppress his June 16 statements, claiming that (1) he was improperly subjected to custodial interrogation after invoking his right to counsel, (2) he did not make a valid waiver of rights to silence and counsel and (3) his statements were not made voluntarily. The Government filed a response to the motion, resisting all three claims. A hearing was held on September 29, 2015, at which Agent Rowland testified and four exhibits were received into evidence. Edenso is scheduled to stand trial on December 1, 2015.

## DISCUSSION

### A. Right to Counsel

Edenso first claims that the statements he made to Agents Rowland and Provost on June 16 should be suppressed because he invoked his *Miranda* right to counsel. It is undisputed that after being advised of his *Miranda* warnings, Edenso said, "I want a

---

[9] *See id.* at 2:25-2:26, 2:56-3:19.

[10] *See id.* at 3:26-26:09.

[11] *See id.* at 22:22-22:34.

lawyer."[12] He argues that this statement was sufficient as a matter of law to trigger the strictures of *Miranda* and prohibit any questioning, or its functional equivalent, about the incident involving C.E. until counsel was made available to him. The Government contends that Edenso verbalized a desire to continue talking to the agents, waived his rights (including his previously invoked right to have a lawyer present) and agreed to and did speak with the agents.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."[13] The Supreme Court adopted a set of prophylactic measures to protect a suspect's right from the "inherently compelling pressures" of custodial interrogation.[14] The Court declared that "incommunicado interrogation" in an "unfamiliar" "police-dominated atmosphere,"[15] involves psychological pressures "which work to undermine [the suspect's] will to resist and compel him to speak where he would not otherwise do so freely."[16] According to the Court, "[u]nless adequate protective devices are employed

---

[12]*Id.* at 1:43-1:44; Ex. 3, p.1, line 22.

[13]U.S. Const. amend. V.

[14]*Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

[15]*Id.* at 456-57.

[16]*Id.* at 467.

to dispel the compulsion inherent in custodial surroundings, no statement obtained from the [suspect] can truly be the product of his free choice."[17]

To neutralize this coercive pressure, the Supreme Court held that law enforcement officers must warn a suspect before questioning him that he has the right, among other things, to the presence of an attorney.[18] If, after warnings are given, the suspect indicates that he wants an attorney, the interrogation must cease until an attorney is present.[19]

A suspect though can waive these rights.[20] But the traditional standard for such a waiver is not sufficient to protect a suspect's right to have counsel with him at a subsequent interrogation if he has previously requested counsel; rather, "additional safeguards" are necessary.[21] When the suspect invokes his right to have counsel present, a valid waiver cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has already been advised of his rights.[22] He is not subject to further interrogation by authorities until counsel has

---

[17]*Id.* at 458.

[18]*Id.* at 444.

[19]*Id.* at 474.

[20]*Id.* at 475.

[21]*Edwards v. Arizona*, 451 U.S. 477, 484 (1981).

[22]*See id.*

been made available to him unless he "himself initiates further communication, exchanges or conversations with the police."[23]

The rationale for this is that once a suspect indicates that "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect."[24] A voluntary waiver is sufficient to protect the suspect's right to counsel initially but not after the suspect has invoked this right.[25] The assumption for this distinction is that the attempted interrogation later on – following the right to counsel invocation – poses a significantly greater risk of coercion that must be protected.[26] That risk not only results from persistence on the part of police in trying to get the suspect to talk, but also from the continued pressure that comes from custodial interrogation – pressure that is likely to "increase as custody is prolonged."[27] The presumption of involuntariness that attaches when counsel has been requested

---

[23]*Id.* at 485.

[24]*Arizona v. Roberson*, 486 U.S. 675, 681 (1988).

[25]*See Maryland v. Shatzer*, 559 U.S. 98, 105 (2010).

[26]*See id.*

[27]*Id.* (quoting *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990)).

ensures that police will not take advantage of the suspect and interrogate him further in a prolonged custodial environment.[28]

For there to be an invocation of the right to counsel, a suspect must make "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney."[29] And "the suspect must unambiguously request counsel."[30] While the suspect need not "'speak with the discrimination of a Oxford don,' he must articulate his desire to have counsel present sufficiently clearly that a reasonable [ ] officer in the circumstances would understand the statement to be a request for an attorney."[31]

A suspect may be interrogated, even after exercising his right to counsel, if he initiates further conversation with police officers.[32] This means that the impetus must come from the suspect and not from the officers.[33] "'[I]nterrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that police should

---

[28] *See Shatzer*, 559 U.S. at 105.

[29] *Davis v. United States*, 512 U.S. 452, 459 (1994) (*quoting McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)).

[30] *Davis*, 512 U.S. at 459.

[31] *Id.* (citation omitted).

[32] *See Edwards*, 451 U.S. at 484-85.

[33] *See Oregon v. Bradshaw*, 462 U.S. 1039, 1043-46 (1983).

know are reasonably likely to elicit an incriminating response from the suspect."[34] This definition is a rather broad and flexible one that recognizes the enhanced coercive pressures that official words or conduct may impose on the suspect in an "interrogation environment . . . created for no purpose other than to subjugate him to the will of his examiner[s]."[35] Thus, where an officer's statements are (1) the functional equivalent of interrogation, (2) designed to generate the retraction of an earlier request for counsel or (3) made to keep a dialogue going, a suspect cannot be said to have initiated further conversation.[36]

---

[34]*Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

[35]*Miranda*, 384 U.S. at 457.

[36]*See Innis*, 446 U.S. 302, n. 7 (if the police officer acts with the purpose of getting the suspect to talk, then the officer should know that his conduct is reasonably likely to elicit an incriminating response); *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994) (under *Edwards*, initiation of conversation is permissible only when "without influence by the authorities, the suspect shows a willingness and desire to talk generally about the case"); *United States v. Gomez*, 927 F.3d 1530, 1537-39 (11th Cir. 1991) (agent's statements to the suspect, after the suspect asserted his desire to seek counsel, regarding the severity of possible sentence and advantages of cooperation, constituted interrogation in violation of the suspect's Fifth Amendment rights; agent should have known that his statements were reasonably likely to evoke an inculpatory response); *Smith v. Endell*, 860 F.2d 1528, 1533-34 (9th Cir. 1988) (police may not make statements intended to extend a conversation or open up a more generalized discussion relating directly or indirectly to the investigation), *cert. denied*, 498 U.S. 981 (1990); *United States v. DeLaurentiis*, 629 F.Supp.2d 68, 74-75 (D. Me. 2009) (agent's statements, including "you'll be better just to talk to us," were intended to actively dissuade the suspect from contacting a lawyer); *United States v. Foreman*, 993 F.Supp. 186, 192 (S.D.N.Y. 1998) (officer's statement that suspect could do better by speaking with police was the functional equivalent of interrogation); *see also Christopher v. Florida*, 824 F.2d 836, 845-46 (11th Cir. 1987) ("'Initiation' means to 'begin' or 'set-going'; in the interrogation context, it means that the suspect 'started' not simply 'continued' the interrogation. Therefore,

(continued...)

Here, Edenso's statement, "I want a lawyer" was a clear invocation of his *Miranda* right to counsel.[37] He did not initiate further conversation, after his invocation, Agent Rowland did.[38] Indeed, what prompted Edenso's inquiry, the communication that later occurred and ultimately his implicative remarks, were the statements the agent made right after Edenso said he wanted a lawyer. When Edenso requested a lawyer, the agent should have stopped the interview immediately and refrained from interrogating Edenso about C.E.'s injuries until an attorney was present. Because the agent failed or refused to do so, Edenso's statements were obtained in violation of the

---

the first prong of the initiation test requires that any previous police-initiated interrogation have ended *prior* to the suspect's alleged initiatory remark; for, just as one cannot start an engine that is already running, a suspect cannot 'initiate' an ongoing interrogation." Applying these principles, the suspect's question did not qualify as "initiation" because it occurred after the police had already resumed their interrogation of him.) (emphasis in original), *cert. denied*, 484 U.S. 1077 (1988).

[37]*See Roberson*, 486 U.S. at 683 (suspect's statement that he "wanted a lawyer before answering any questions"); *Smith v Illinois*, 469 U.S. 91, 93 (1984) (holding that the defendant clearly invoked his right to counsel by saying "Yeah. I'd like to do that" after being advised of his right to consult with a lawyer and to have a lawyer present during questioning); *Bradshaw*, 462 U.S. at 1041-42 ("I do want an attorney before it goes much further"); *Edwards*, 451 U.S. at 479 ("I want an attorney before making a deal"); *see also United States v. Alexander*, No. 1:06-CR-200-02, 2006 WL 3366359 at *8 (N.D. Ohio Nov. 20, 2006) ("I want a lawyer"), *aff'd*, 540 F.3d 494 (6th Cir. 2008), *cert. denied*, 556 U.S. 1173 (2009); *State v. DeJonge*, 287 Neb. 864, 888, 845 N.W.2d 858-877 (2014) (same); *State v. Brown*, 287 Ga. 473, 477, 697 S.E.2d 192, 195 (2010) (same).

[38]*See Bradshaw*, 462 U.S. at 1048-50 (Powell, J. concurring); *see and compare with United States v. Hull*, 419 F.3d 762, 767-68 (8th Cir. 2005), *cert. denied*, 547 U.S. 1140 (2006).

*Edwards* rule and are not admissible as substantive evidence at trial – irrespective of whether Edenso waived his *Miranda* rights later on.[39]

Agent Rowland claims that his post-invocation statements were only meant to give Edenso "instruction" on how to contact the agents in the event he wanted to talk to them at a later time.[40] If this were true, then why did the agent make reference to Edenso wanting to talk to the agents "before" having a lawyer present and tell Edenso it was "better" if he talked to them? And if the agent wanted to provide contact information, should Edenso desire to talk to the agents in the future, why not simply leave a business card? The more logical explanation for these statements is that they were intended to coax Edenso into submitting to an interview without the benefit of counsel. The agent's tactics appear to be a contrived attempt to get around the *Edwards* rule and to inspire Edenso to talk about what he did to C.E. in hopes of getting a confession.[41] This was improper and requires suppression under *Miranda* and its progeny.

---

[39] *See Shatzer*, 559 U.S. at 104-05; *Minnick*, 498 U.S. at 150-55; *Roberson*, 486 U.S. at 682; *Edwards*, 451 U.S. at 484-87.

[40] Mot. Hrg. Tr. 50-52, 70.

[41] *See United States v. Wysinger*, 683 F.3d 784, 795-96 (7th Cir. 2012); *United States v. Horton*, No. 4:08CR3005, 2009 WL 1872612 at *6 (D. Neb. June 30, 2009); *Carr v. State*, 934 N.E.2d 1096, 1105-07 (Ind. 2010); *Manley v. State*, 287 Ga. 338, 347-48, 698 S.E.2d 301, 307 (2010); *State v. Ray*, 659 N.W.2d 736, 742 (Minn. 2003); *see also United States v. Smith*, CR. 07-30097, 2008 WL 650450 at *5 (D.S.D. Feb. 15, 2008) (where an FBI agent deceptively made statements, not to ascertain defendant's actual intent, but to persuade him not to invoke his right to counsel and to impel him to give up that right).

## B. Impeachment

Having determined that the Government may not use Edenso's statements in its case-in-chief, there is left to be decided whether these statements can be utilized for impeachment purposes.

More than four decades ago, the Supreme Court concluded that although statements taken in violation of the prophylactic *Miranda* rules cannot be used as substantive evidence, they may nonetheless be admissible to impeach the conflicting testimony of a defendant.[42] If the defendant chooses to testify on his own behalf, he assumes a reciprocal "obligation to speak truthfully and accurately,"[43] and may not "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths."[44] The High Court has mandated the exclusion of reliable and probative evidence for all purposes only when it has been derived from involuntary statements.[45] The Court has never prohibited the prosecution from using relevant and

---

[42]*See Oregon v. Hass*, 420 U.S. 714, 722-23 (1975); *Harris v. New York*, 401 U.S. 222, 224-26 (1971).

[43]*Harris*, 401 U.S. at 225.

[44]*Id.* at 224 (*quoting Walder v. United States*, 347 U.S. 62, 65 (1954)); *see also Hass*, 420 U.S. at 723 (applying the same rationale where the suspect was advised of his rights and then asked for counsel but was questioned without his request being honored).

[45]*See New Jersey v. Portash*, 440 U.S. 450, 459 (1979); *Mincey v. Arizona*, 437 U.S. 385, 398 (1978); *see also Kansas v. Ventris*, 556 U.S. 586, 594 (2009) (defendant's statement to jail house informant, concededly elicited in violation of the Sixth Amendment, was

(continued...)

11

voluntary statements of a defendant when the violations alleged relate only to procedural safeguards (like the *Miranda* rules) that are "not themselves rights protected by the Constitution,"[46] but are simply measures designed to ensure that constitutional rights are protected."[47] This is because the "search for the truth" outweighs the "speculative possibility" that exclusion of evidence might deter future violations of rules that are of themselves not compelled directly by the Constitution.[48]

Based on the totality of the circumstances present here, the Court is satisfied that Edenso's statements were not "extracted by threats, violence or express or implied promises sufficient to overbear [his] will and [to] critically impair his capacity for self-determination."[49] The fact that the statements were made while Edenso was in custody

---

admissible to impeach his inconsistent testimony at trial); *Michigan v. Harvey*, 494 U.S. 344, 349-54 (1990) (defendant's post-arraignment statement, obtained in violation of his Sixth Amendment right to counsel, may be used to impeach his testimony).

[46]*Michigan v. Tucker*, 417 U.S. 433, 444 (1974).

[47]*Harvey*, 494 U.S. at 351.

[48]*Hass*, 420 U.S. at 722-23; *see also United States v. Havens*, 446 U.S. 620, 626 (1980) ("There is no gainsaying that arriving at the truth is a fundamental goal of our legal system" and that when a defendant testifies, he must do so "truthfully or suffer the consequences.")

[49]*United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*) (*quoting Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001)), *cert. denied*, 543 U.S. 1145 (2005); *see also Hass*, 420 U.S. at 722-23 (holding that the suspect's statements, made after he continued interrogation following his request for an attorney, were voluntary for impeachment purposes where "the pressure on him was no greater than that on any person in like custody or under inquiry by any investigating officer"); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*,
(continued...)

is but one factor among many that must be weighed and carefully evaluated with all aspects of the interrogation.[50] The record as a whole demonstrates that Edenso's statements were voluntary and not the product of coercive interrogation or overreaching on the part of Agents Rowland and Provost.[51]

Edenso read the advice of rights form, initialed each of his rights and signed the waiver portion of the form. Although he requested that counsel be present – a request that was not heeded to – he nevertheless agreed to talk to the agents about what happened to C.E. and did so.

The interview lasted about 23 minutes and was not hostile or combative. Agents Rowland and Provost never threatened, promised or tricked Edenso or talked in a loud or aggressive manner to him. Nor did they restrain him, display their weapons or point a finger in his chest. And while with the agents, Edenso was not under the influence of alcohol or drugs and nothing he said or did indicated that he suffered from any sort of mental incapacity or was particularly suggestive and vulnerable to inquiries by authority figures.

---

§6.2(c) (3d. ed. 2007 & 2014-15 Supp.)

[50] *See generally* 2 *Criminal Procedure*, §6.2(c).

[51] *See Hass*, 420 U.S. at 722-23; *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

On the recording, Edenso appeared willing to discuss the circumstances surrounding C.E.'s death and was sorry and remorseful for what occurred. He actively and coherently responded to questioning, initially minimizing his involvement and what he did to C.E., bringing up mitigating circumstances to justify his actions and insisting that his conduct was not intentional. While Edenso did break down and cry several times, he was able to gather himself and continue on with the interview.

Regardless, Agents Rowland and Provost's dealings with Edenso that day did not resemble or even approach the gross abuses that have led the Supreme Court in other cases to suppress statements on voluntariness grounds.[52] What defines these

---

[52] *See e.g. and compare with Arizona v. Fulminante*, 499 U.S. 279 (1991) (defendant, an alleged child murderer, subjected to a credible threat of physical violence (sufficient to make him reasonably fearful of losing his life) that overbore his will); *Mincey*, 437 U.S. 385 (where defendant, who had been seriously wounded just a few hours before, was subjected to "relentless" interrogation while lying in his hospital bed, unable to speak, severely depressed, suffering from "unbearable" pain and encumbered by tubes, needles and a breathing apparatus); *Greenwald v. Wisconsin*, 390 U.S. 519 (1968) (defendant, on medication, interrogated for over 18 hours without food or sleep); *Brooks v. Florida*, 389 U.S. 413 (1967) (confession extracted after defendant confined naked in a tiny "punishment cell" without toilet facilities except a hole in one corner, forced to subsist for two weeks on a daily fare of thin soup and water and under the complete control and dominion of jailers); *Beecher v. Alabama*, 389 U.S. 35 (1967) (police officers held gun to wounded defendant's head to obtain confession from him); *Davis v. North Carolina*, 384 U.S. 737 (1966) (16 days of incommunicado interrogation in closed cell without windows, limited food and overbearing tactics); *Haynes v. Washington*, 373 U.S. 503 (1963) (police made an express threat of continued incommunicado detention by telling defendant that he could not call his wife for purposes of contacting a lawyer unless he first gave a statement); *Lynumn v. Illinois*, 372 U.S. 528 (1963) (defendant told she could lose her welfare benefits and custody of her children); *Townsend v. Sain*, 372 U.S. 293 (1963) (defendant given a drug with truth-serum properties by police physician and then interrogated by officers who knew that he had been medicated); *Reck v. Pate*,
(continued...)

cases and places them in the involuntariness category, is the interrogating officers' use of coercion to obtain statements from the suspects.

Edenso was not impermissibly coerced. The audio recording reveals that he was in control of his faculties and that he possessed the wherewithal and fortitude to withstand confessing, without reservation or excuse, to harming C.E. On this record, when considered in light of Edenso's personal characteristics (a 25-year-old with two jobs who had a high school diploma, one year of college and could read, write and understand the English language), Agents Rowland and Provost did not overwhelm his will and extort incriminating statements from him. Edenso's June 16 statements may therefore be utilized at trial if and when he elects to testify in his own defense.

---

367 U.S. 433 (1961) (defendant held for four days with inadequate food and medical attention until confession obtained); *Culombe v. Connecticut*, 367 U.S. 568 (1961) (defendant held for five days of repeated questioning during which police employed coercive devices); *Rogers v. Richmond*, 365 U.S. 534 (1961) (defendant's confession obtained in response to a police threat to take his wife into custody); *Blackburn v. Alabama*, 361 U.S. 199 (1960) (defendant, who was "probably insane," signed a confession composed by a deputy sheriff after being interrogated for eight to nine hours in a tiny room which on occasion was filled with police officers); *Payne v. Arkansas*, 356 U.S. 560 (1958) (defendant held incommunicado for three days with little food; confession given when officers informed him that the police chief was preparing to admit lynch mob into the jail); *Ashcraft v. Tennessee*, 322 U.S. 143 (1944) (defendant questioned by relays of officers for 36 hours without an opportunity for sleep); *Brown v. Mississippi*, 297 U.S. 278 (1936) (defendant brutally beaten before confessing).

## CONCLUSION

All of Edenso's post-*Miranda* statements, made on June 16, should be suppressed and may not be used as substantive evidence at trial. But the Government may use the statements to impeach Edenso's own conflicting testimony in the event he takes the witness stand and testifies.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Edenso's motion to suppress statement[53] be granted in part and denied in part for the reasons, and based on the authorities, stated in this report.

## NOTICE

The parties have 14 calendar days after service of this report to file their objections to the same.[54] Unless an extension of time for cause is obtained,[55] failure to

---

[53] *See* Dkt. No. 26.

[54] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[55] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

file timely objections will result in the waiver of the right to appeal questions of fact.[56]

Objections must "identify[] those issues on which further review is desired[.]"[57]

DATED this 15th day of October, 2015.

BY THE COURT:

*/s/ Mark A. Moreno*
MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[56] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[57] *Arn*, 474 U.S. at 155.